IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANCISCO GAILE GUYTON,

              Petitioner,                No. CIV S-02-1377 FCD GGH P

    vs.

GAIL LEWIS, et al.,

             Respondents.          FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

       Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction for failure to register as a sex offender in violation of Cal. Penal Code § 290(g)(2). Petitioner is serving a sentence of 25 years to life pursuant to the Three Strikes Law.

       This action is proceeding on the second amended petition filed April 1, 2005. Petitioner raises two claims: 1) the trial court applied an incorrect standard when asked to exercise its discretion to strike petitioner's prior convictions; 2) petitioner's sentence violates the Eighth Amendment. After carefully reviewing the record, the court recommends that the petition be denied.

/////

II.  <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA)  applies to this petition for habeas corpus which was filed after the AEDPA became effective.  <u>Neelley v. Nagle,</u> 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy,</u> 117 S. Ct. 2059 (1997).  The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error.  <u>Moore v. Calderon,</u> 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor,</u> 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law.  <u>Id</u>. at 1519.  "Contrary to" clearly established law applies to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner raised his claim alleging that the trial court applied an incorrect standard during sentencing in a habeas corpus petition filed with the California Supreme Court on December 29, 2003.  See May 26, 2005 lodged document, no. 1.  On October 13, 2004, the California Supreme Court issued an unexplained decision denying this petition.  Id., lodged document no. 2.  Accordingly, this court conducts an independent review of the record to determine whether the denial of this claim by the California Supreme Court was contrary to or an unreasonable application of clearly established Supreme Court authority.

/////

1    Petitioner raised his claim alleging that his sentence violated the Eighth

2  Amendment on direct appeal and in his first habeas petition filed with the California Supreme

3  Court.  On direct appeal, the California Court of Appeal found this claim to be waived.  Answer

4  filed June 2, 2003, Exhibit C, p. 6, no. 2.  The California Supreme Court denied petitioner's

5  petition for review and habeas petition raising this claim in unreasoned opinions.  Id., Exhibits F,

6  H.  For the reasons discussed below, the court finds that this claim is procedurally defaulted.

7  III.  Discussion

8    The factual background to petitioner's offense is contained in the opinion of the

9  California Court of Appeal.  After independently reviewing the record, the court finds this

10 summary to be accurate and adopts it below.

11        Defendant Francisco Gaile Guyton had been required since 1979 to register as a
          sex offender pursuant to Penal Code section 290. [Footnote omitted.] There was
12        conflicting evidence regarding the date he moved from a triplex at 734 Hemlock
          Street to a house at 1649 Spring Street in December 1998.  Defendant notified his
13        parole agent of the new address on November 30, and the parole agent visited him
          there on December 9.  However, defendant had not registered his change of
14        residence with Stockton Police Department as of December 26, when officers
          entered the Spring Street house in conjunction with a criminal investigation.
15

16 Answer to Amended Petition filed June 3, 2003, Exhibit C, p. 1.

17    A.  Claim 1: Application of Incorrect Standard

18    Petitioner contends that the sentencing court applied an incorrect standard in

19 violation of his right to due process when it was asked to exercise its discretion and strike

20 petitioner's prior convictions.[1]

21    On direct appeal, petitioner argued that the trial court applied the incorrect legal

22 standard in violation of state law.  The discussion of this claim by the California Court of Appeal

23 is relevant to petitioner's related federal claim:

24

25      [1] Petitioner does not raise the separate claim that the trial court abused its discretion by
   denying his motion to strike his prior convictions in violation of his right to due process.
26

4

At trial, defendant admitted the following three serious felony convictions: (1) a 1979 conviction of first degree burglary; (2) a 1979 conviction of forcible oral copulation; and (3) a 1979 conviction of forcible sodomy.  At sentencing, he moved to strike the prior convictions, arguing the [sic] "the otherwise prescribed penalty more than adequately addresses [defendant's] behavior.  A sentence of life in this case is extreme."  On appeal, defendant contends the trial court used the wrong standard or abused its discretion in ruling on his motion to strike.  We conclude there is no merit in defendant's contentions.

In People v. Superior Court (Romero) (1996) 13 Cal.4th 497 (Romero), and People v. Williams (1998) 17 Cal.4th 148 (Williams), the Supreme Court "delineated the parameters that govern a trial court's discretion under section 1385, subdivision (a), to strike prior conviction allegations in a Three Strikes case."  (People v. Garcia (1999) 20 Cal.4th 490, 497-498 (Garcia).)  Romero held that the trial court could, on its own motion and over the prosecutor's objection, strike a prior conviction in furtherance of justice.  (13 Cal.4th at pp. 504, 529-530.)  At the same time, the Supreme Court cautioned that a court's discretion to strike priors is limited.  (Id. at p. 530.)  "[A] court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely 'to accommodate judicial convenience or because of court congestion.' [Citation.] A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. [Citation.] Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while *ignoring* 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' [Citation.]" (Id. at p. 531, emphases added.)

Williams described these as factors "extrinsic" and "intrinsic" to the sentencing scheme, and provided additional guidance: "[I]n ruling whether to strike or vacate a prior serious...felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious...felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in while or in part, and hence should be treated as though he had not previously been convicted of one or more serious felonies..." (17 Cal.4th at p. 161.)

The Supreme Court explained in Garcia, the most recent elaboration on Romero, that a defendant's "prospects" (Williams, supra, 17 Cal.4th at p. 161) of committing future crimes were affected by the Three Strikes sentence.  It stated that "a defendant's sentence is...a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences. [Citation.]" (20 Cal.4th at p. 500.)

In denying defendant's motion to strike, the court acknowledged difficulty in reaching its decision.  The court described the current offense as "non-violent" and "extremely technical."  It observed that "there was ample evidence to show that [defendant] did not register with the police department as required by law.  But it's a very unusual situation because he did tell his parole officer so it's not as

though he's trying to keep it a secret from everyone." The court also described defendant's "bad record," stating: "So what's happened since 1979 is he was sentenced to state prison, then in 1985 he was convicted of a felony bank robbery. That was 14 years ago. He was returned to prison in 1993 on a parole revocation. Since then, his only conviction was a misdemeanor spousal abuse in July of 1994." The court then explained: "My feeling is if I were to make a decision in this case without reading <u>Romero</u>, without reading <u>Williams</u>, I would say this is not worth 25 years to life. This is not like a murder. This is not a violent felony. It's a technical violation. But reading <u>Romero</u> and, especially reading <u>Williams</u>, I am convinced that if I were to strike the two strikes that the appellate court would find it an abuse of discretion. [¶] My personal feeling is that the serious felonies from 20 years ago—well, one incident, and that his other felony conviction was 14 years ago and, therefore, the two strikes should be stricken even in spite of that misdemeanor. And a big reason for that is because of the technical nature of the instant offense. That's my personal feeling. But looking at these cases, I don't think I'm allowed to have personal feelings. I cannot put my personal feelings into a case." The court relied on <u>Romero</u> and <u>Williams</u> to find that "based on the present status of the law it would be an abuse of discretion for [it] to strike the strikes."

Defendant reads the court's comments regarding its "personal feelings" as showing the court did not believe it had discretion to consider relevant factors, such as the minor nature of the current offense, in ruling on the motion to strike. However, viewed in their totality, the court's remarks show the court was aware of the factors it was required to consider. It reviewed the circumstances of defendant's current conviction, his lengthy criminal history, and the applicable law before making its ruling. In this context, the court's "personal feelings" were merely a comment on the court's personal views of the equities of the Three Strikes sentencing scheme, not an indication the court misunderstood the limits of its discretion. We conclude there was no error.

We also reject defendant's alternative claim the court abused its discretion in denying his motion to strike the prior conviction allegations. The deferential standard of review "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and relevant facts..." (<u>Williams</u>, <u>supra</u>, 17 Cal.4th at p. 162.) Based on the facts and law we have described, the court could reasonably conclude defendant was not "outside the spirit of the Three Strikes law in any part, and hence may not be treated as though he had not previously been convicted to those serious...felonies." (<u>Id.</u> at p. 163.)

Respondent's Answer, filed June 2, 2003, pp. 2-6.

"Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.'" <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994). <u>See also</u> <u>Watts v. Bonneville</u>, 879 F.2d 685, 687 (9th Cir. 1989) (federal court may not review application of § 654). This Ninth Circuit case law finds its roots in <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990) in which the Supreme Court held:

1    [R]espondent's contention–that the Arizona Supreme Court's
     application of its narrowing construction to the facts of his case
2    nevertheless failed to distinguish his case from cases in which the
     court did not find the aggravating circumstance–reduces, in
3    essence, to a claim that the state court simply misapplied its own
     aggravating circumstance to the facts of his case.  Because federal
4    habeas corpus relief does not lie for errors of state law, see, e.g.,
     Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d
5    29 (1984); Rose v. Hodges, 423 U.S. 19, 21-22, 96 S.Ct. 175,
     177-178, 46 L.Ed.2d 162 (1975) (per curiam), federal habeas
6    review of a state court's application of a constitutionally narrowed
     aggravating circumstance is limited, at most, to determining
7    whether the state court's finding was so arbitrary or capricious as
     to constitute an independent due process or Eighth Amendment
8    violation.  Cf. Donnelly v. DeChristoforo, 416 U.S. 637, 642, 643,
     94 S.Ct. 1868, 1871, 1871, 40 L.Ed.2d 431 (1974) (absent a
9    specific constitutional violation, federal habeas review of trial error
     is limited to whether the error "so infected the trial with unfairness
10   as to make the resulting conviction a denial of due process").

11   The undersigned recognizes that Ballard v. Estelle, 937 F.2d 453, 456 (9th Cir.

12   1991) came to a different conclusion than the other law discussed above on account of its holding

13   that misapplication of state sentencing laws gives rise to a liberty interest which can be reviewed

14   in habeas corpus.  However, Lewis holds that a mere alleged misapplication of state sentencing

15   law cannot be reviewed in habeas corpus absent a finding of arbitrary or capricious conduct on

16   the part of the state courts.  Therefore, Ballard cannot be considered binding on the undersigned

17   even if it were not inconsistent with other Ninth Circuit law.  See also Estelle v. McGuire, 502

18   U.S. 62, 68 n.2, 112 S. Ct. 475, 480 (1991) disapproving of a Ballard type "misapplication of

19   state law" holding of Blair v. McCarthy, 881 F.2d 602 (1989).  See also Martinez v. Johnson,

20   255 F.3d 229, 246 (5th Cir. 2001), finding that petitioner failed to demonstrate a liberty interest

21   in the consistent application of state law.

22   For the reasons stated by the California Court of Appeal, this court finds that the

23   trial court did not apply an incorrect standard when it considered whether or not to strike

24   petitioner's prior convictions.  Petitioner's due process claim must fail because no misapplication

25   of state sentencing law occurred.

26   /////

1    After independently reviewing the record, the court finds that the denial of this

2  claim by the California Supreme Court was not an unreasonable application of clearly established

3  Supreme Court authority.  Accordingly, this claim should be denied.

4    B.  Claim 2: Sentence Violates Eighth Amendment

5    Petitioner argues that his sentence violates the Eighth Amendment.  Respondent

6  argues that this claim is procedurally barred.  As stated above, petitioner raised this claim in his

7  appeal filed in the California Court of Appeal.  The California Court of Appeal found that

8  petitioner waived the claim on appeal:

9       Defendant did not raise this constitutional issue in his written sentencing motions
        or at the sentencing hearing, and waives the issue on appeal.  (See People v.
10      Kelley (1997) 52 Cal.App.4th 568, 583; People v. DeJesus (1995) 38 Cal.App.4th
        1, 27.)  We address the merits of his claim to forestall the argument he was denied
11      effective assistance of counsel.

12  Answer filed June 2, 2003, exhibit C, p. 6-7, no. 2.

13    Because the issue of whether a sentence is cruel and unusual punishment is based

14  on the nature and facts of the crime and offender, it is waived if not raised in the trial court.

15  People v. Kelley, 52 Cal. App. 4th 568, 60 Cal. Rptr. 2d 653 (1997); People DeJesus, 38 Cal.

16  App. 4th 1, 44 Cal. Rptr. 2d 796 (1995).

17    Petitioner raised his Eighth Amendment in his petition for review and in his first

18  petition filed with the California Supreme Court.  June 2, 2003, answer, exhibits E, G.  The

19  California Supreme Court issued opinions, without explanations, denying these petitions.  Id.,

20  exhibits F, H.

21    Because the last reasoned state court opinion denying petitioner's habeas petition

22  was on procedural grounds, respondent contends that this claim is barred.  See Ylst v.

23  Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991) (federal courts look through to last reasoned

24  state court judgment to determine whether claim is procedurally barred).

25    Based on concerns of comity and federalism, federal courts will not review a

26  habeas petitioner's claims if the state court decision denying relief rests on a state law ground

8

1   that is independent of federal law and adequate to support the judgment.  Coleman v. Thompson,

2   501 U.S. 722, 111 S. Ct. 2546, 2554 (1991); Harris v. Reed, 489 U.S. 255, 260-62, 109 S. Ct.

3   1038 (1989).  Generally, the only state law grounds meeting these requirements are state

4   procedural rules.  However, the procedural basis of the ruling must be clear.  Ambiguous

5   reference to procedural rules is insufficient for invocation of procedural bar.  Calderon v. United

6   States District Court (Bean), 96 F.3d 1126, 1131 (9th Cir. 1996).  Similarly, where the procedural

7   and merits analysis are intermixed, it cannot be said that the procedural bar is independent of

8   federal law, i.e., there is no plain statement of reliance on procedural bar.  Harris v. Reed, supra.

9           If there is an independent and adequate state ground for the decision, the federal

10  court may still consider the claim if the petitioner demonstrates:  (1) cause for the default and

11  actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental

12  miscarriage of justice.  Harris, 489 U.S. at 262, 109 S. Ct. at 1043.  The existence of cause for a

13  procedural default must ordinarily turn on whether the prisoner can show that some objective

14  factor external to the defense impeded counsel's efforts to comply with the State's procedural

15  rule.  McCleskey v. Zant, 499 U.S. 467, 493-94, 111 S. Ct. 1454, 1476 (1991).  Examples of

16  cause include showings "that the factual or legal basis for a claim was not reasonably available to

17  counsel," "that some interference by officials made compliance impracticable," or "of ineffective

18  assistance of counsel."  Murray, 477 U.S. at 488, 106 S. Ct. at 2645.  Prejudice is difficult to

19  demonstrate:

20              The showing of prejudice required under Wainwright v. Sykes is
                significantly greater than that necessary under "the more vague
21              inquiry suggested by the words 'plain error.'"  Engle, 456 U.S., at
                135, 102 S.Ct., at 1575; Frady, supra, 456 U.S., at 166, 102 S.Ct.,
22              at 1593.  See also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct.
                1730, 1736, 52 L.Ed.2d 203 (1977).  The habeas petitioner must
23              show "not merely that the errors at ... trial created a possibility of
                prejudice, but that they worked to his actual and substantial
24              disadvantage, infecting his entire trial with error of constitutional
                dimensions."  Frady, supra, at 170, 102 S.Ct., at 1596.
25

26  Murray v Carrier, 477 U.S. at 493-494, 106 S. Ct. at 2648 (1986).

                                            9

1    Although different phraseology is used in the default context from that used in the

2    ineffective assistance of counsel prejudice inquiry, as stated above, the ultimate application of the

3    two prejudice inquiries is essentially similar—that is, whether the prejudice is sufficient to have

4    undermined the reviewer's confidence in the result of the trial.

5    If the state adequately pleads an independent and adequate state procedural

6    ground, the burden shifts to petitioner to come forward with "specific factual allegations that

7    demonstrate the inadequacy of the state procedure, including citation to authority demonstrating

8    inconsistent application of the rule.  Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003).

9    By arguing that the instant claim is defaulted based on the California Court of

10   Appeal's finding that petitioner waived the claim, the state has met its burden of pleading an

11   independent and adequate state procedural ground.  The California Court of Appeal's decision to

12   alternatively reject the merits of the claim does not undermine the application of the procedural

13   bar.  Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S. Ct. 1038 (1989).

14   Petitioner has not come forward with any evidence demonstrating that the rule

15   applied by the state appellate court is not firmly established and not regularly followed by the

16   California courts.  Because petitioner has not met his burden, as discussed in Bennett, supra, the

17   court finds that the claim is procedurally barred unless petitioner demonstrates 1) cause for the

18   default and actual prejudice resulting from the alleged violation of federal law, or (2) a

19   fundamental miscarriage of justice.  Harris, 489 U.S. at 262, 109 S. Ct. at 1043.  Petitioner did

20   not file a reply to respondent's answer addressing these issues.  Accordingly, the court finds that

21   he has not demonstrated cause and prejudice or a fundamental miscarriage of justice.

22   In any event, were the court to consider the merits of petitioner's claim, it would

23   find no Eighth Amendment violation and, therefore, no prejudice or violation of fundamental

24   fairness.  Although the conviction offense here gives the court pause in light of the resultant 25

25   years to life sentence, as it is quasi-technical violation of the sex offender registration laws, the

26   undersigned believes that petitioner's past record places petitioner's case on the permissible side

of the Eighth Amendment.  The discussion commences with a discussion of recent Supreme Court authority.

In <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S. Ct. 1166 (2003), the Supreme Court established that although a sentence that is "grossly disproportionate" to the crime committed violates the Eighth Amendment prohibition against cruel and unusual punishment, state legislative policies directed to the problem of criminal recidivism are an important factor and are entitled to great deference in weighing the "gravity of the offense" for which an enhanced sentence is given under state repeat offender laws.  <u>Id</u>. at 72.  Deference given to state recidivism policies in Eighth Amendment cases, however, is not unlimited.  <u>Id</u>.  And in some "exceedingly rare" and "extreme case[s]," sentences validly imposed under a state recidivism statute may still violate the Eighth Amendment.  <u>Id</u>.

It is only necessary to review <u>Ewing v. California</u>, 538 U.S. 11, 123 S. Ct. 1179 (2003) and <u>Lockyer</u> to understand that petitioner's claim herein cannot overcome the AEDPA "unreasonable" barrier.  Each case involved an Eighth Amendment challenge after the sentences for relatively minor offenses were greatly enhanced pursuant to state repeat offender laws.  They also involved enhanced sentences that mandated a minimum term of imprisonment by reason of the defendant's repeat offender status that was higher than the maximum prison term that could have been imposed for the same crime as a first offense.  In each of these cases, the Supreme Court first found that the "gross disproportionality" standard was the applicable legal standard.  Next, the Court reasoned that the "gravity of the offense" for which the enhanced sentence was imposed must be assessed under the Eighth Amendment, not only by reference to the nature and severity of the triggering offense, but also by reference to the state's recidivism policy, as expressed in the state's repeat offender statutes, and to the totality of the offender's criminal history.

In <u>Lockyer</u> and <u>Ewing</u>, the Supreme Court affirmed California Three Strikes Law sentences for two "career criminals" with lengthy criminal histories and triggering offenses that

repeated their prior crimes.  In <u>Lockyer</u>, a federal habeas proceeding, the defendant was
convicted of two felony counts of petty theft with a prior conviction and sentenced to two
consecutive terms of 25 years to life.  Andrade's criminal history included the following
activities: multiple counts of burglary, for which he was sentenced 120 months in prison;
misdemeanor theft, for which he was sentenced to six days in jail with a year of probation;
transportation of marijuana, for which he was sentenced to eight years in federal prison;
misdemeanor theft, for which he was sentenced to 180 days in jail; and transportation of
marijuana, for which he was sentenced to 191 days in federal prison.  He was also arrested for a
state parole violation arising from his escape from federal prison.  The Supreme Court held that
because "the precise contours" of the gross disproportionality principle were "unclear" the state
court did not make an objectively unreasonable application of clearly established federal law.
<u>Lockyer</u>, 538 U.S. at 68-70.

In <u>Ewing</u>, a direct appeal case, the Supreme Court affirmed the state court's
upholding of Ewing's sentence of 25 years to life in prison.  <u>Ewing</u>, 538 U.S. at 29-30.  The
triggering offense for Three Strikes Law purposes was grand theft of $1,200 of merchandise and
was petitioner's fifteenth conviction for which he had previously served nine separate terms of
incarceration.  <u>Id</u>. at 18.  Petitioner's criminal history evidenced a pattern of increasing violence.
While noting that Ewing's triggering offense of grand theft "was certainly not one of the most
passive felonies a person could commit . . . . In weighing the gravity of Ewing's offense, we must
place on the scales not only his current felony, but also his long history of felony recidivism.
Any other approach would fail to accord proper deference to the policy judgments that find
expression in the legislature's choice of sanctions."  <u>Id</u>. at 28-30.  After careful consideration of
Ewing's triggering offense, along with his long, violent criminal history, the Court ruled that
Ewing's sentence did not raise an inference of gross disproportionality.  <u>Id</u>. at 30.

In light of these two cases, petitioner's sentence is not grossly disproportionate to
the crime committed for Eighth  Amendment purposes in light of his criminal history.

1   Petitioner's criminal history included convictions in 1979 for burglary, forcible oral copulation

2   and forcible sodomy.  CT 5, RT 208-209 (prior conviction enhancements were amended to allege

3   that petitioner was convicted of forcible oral copulation rather than attempted forcible rape and to

4   strike one of the burglary convictions because it was premised on a conviction that had been

5   reversed).

6           Although not in the court's record, respondent's brief on appeal summarizes the

7   information contained in petitioner's rap sheet which included the additional convictions.  June

8   2, 2003, Answer, Exhibit B, p. 8-9.  In 1969, petitioner was convicted of burglary and

9   unauthorized use of a vehicle as a juvenile.  Id..  In 1974 petitioner was convicted of

10  misdemeanor battery.  Id.  In 1985 petitioner was convicted of robbery and assault.  Id.  In 1994

11  petitioner was convicted of spousal abuse.  Id.  Petitioner was imprisoned for his convictions

12  occurring in 1969 (unauthorized use of a vehicle), 1979 and 1985.  As did the defendants in

13  Ewing and Lockyer, petitioner has a lengthy criminal history, and he has been incarcerated

14  several times.

15          In a recent case decided post Lockyer and Ewing, the Ninth Circuit found that the

16  25-year-to-life sentence under the Three Strikes Law was unconstitutional where imposed for a

17  third offense of shoplifting a $199 VCR and the petitioner's prior criminal history consisted

18  solely of two convictions for second-degree robbery upon a single guilty plea.  Ramirez v.

19  Castro, 365 F.3d 755 (9th Cir. 2004).  The federal appellate court held that these facts constituted

20  one of those "exceedingly rare" cases, referenced in Lockyer v. Andrade, supra, in which the

21  sentence imposed was grossly disproportionate.  Ramirez, 365 F.3d at 756-57.  Prosecutors in the

22  1996 charge used two nonviolent shoplifting offenses committed in 1991 to which petitioner had

23  pled guilty for which he had served one sentence of just over six months in county jail to charge

24  petitioner with one count of petty theft with a prior theft-related conviction, punishable as a

25  felony, after which the jury found the 1991 convictions were strikes.  Id. at 756.  Although the

26  trial court, pre-trial, had indicated an inclination to do so, it denied Ramirez's motion to strike

13

1   one or both of the two prior shoplifts.  Id.  The 25 year-to-life sentence imposed for three

2   shoplifting convictions, the Ninth Circuit noted, was more severe than that which would have

3   been imposed if any of the crimes had been murder, manslaughter or rape.  Id.

4        Ramirez pled guilty to the two earlier shoplifting offenses, unaware that he was

5   putting two strikes on his record, since the Three Strikes Law had not yet been enacted.  Id. at

6   757.   He took the plea for a one year sentence in county jail and three years probation after

7   having allegedly been told that his failure to do so would result in his sister, also implicated in

8   one of the shoplifts, being sentenced to five years in prison.  Id.  Ramirez served six months and

9   twenty days, was released and completed probation without incident.  Id.  Ramirez had no

10  encounters with the law until the third shoplifting offense several years later in which no force or

11  violence was associated; minimal force was associated with the prior offenses.  Id. at 757-58.

12  Ramirez could have been charged with a misdemeanor petty theft and sentenced to a maximum

13  of six months in jail.  Id. at 758.  Ramirez, unlike the recidivists in Rummel, Solem, Ewing and

14  Andrade, (and unlike petitioner herein) had never been sentenced to state prison, and in his entire

15  criminal history, had only served one period of incarceration in county jail.  Id., at 769.  Finding

16  Ramirez's case to constitute one of "the extremely rare case that gives rise to an inference of

17  gross disproportionality,...." the court proceeded to a comparative analysis of his sentence, intra

18  and inter jurisdictionally.  Id ., at 770-773.  The state court was ultimately found to have

19  unreasonably applied the gross disproportionality principle to the "unique facts of Ramirez's

20  case."  Id., at 774.

21       In light of Lockyer and Ewing, petitioner's sentence herein could only be found to

22  be grossly disproportionate to the crime committed for Eighth Amendment purposes if the facts

23  of his case were sufficiently analogous to those of the "extremely rare" case identified in

24  Ramirez.  While the offense that led to petitioner's Three Strikes sentence was non-violent, his

25  criminal history was more extensive than Ramirez and involved incarceration in state prison.

26  Petitioner's criminal history does not demonstrate a criminal record sufficiently analogous to that

14

1  of <u>Ramirez</u> to warrant habeas relief.

2         The trial judge, in his own way, considered and weighed the somewhat technical

3  nature of the conviction offense against the serious criminal record—a record that demonstrated

4  petitioner's propensity to prey on persons he believed less able to defend themselves from harm.

5  The undersigned cannot say that the trial judge's decision was AEDPA unreasonable.

6         For the reasons discussed above, the court finds that petitioner's Eighth

7  Amendment claim is procedurally barred and, ultimately, not meritorious.

8         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

9  a writ of habeas corpus be denied.

10         These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within ten days after service of the objections.  The parties are advised

16  that failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: 9/12/05

19                              /s/ Gregory G. Hollows

20                              GREGORY G. HOLLOWS
                            UNITED STATES MAGISTRATE JUDGE

21  ggh:kj
    guyton.157

22

23

24

25

26